**George T. Holler**
Holler Law Firm, LLC
9 Research Drive, Suite 2
Milford, CT 06460
t:  (203) 301-4333
f:  (203) 306-3113
CT 27371
georgeh@hollerlawfirm.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
## COURT FILE NO.: 12-74

| | | |
|---|---|---|
| **Dorothy Ann Burlison** | ) | **COMPLAINT** |
| | ) | |
| | ) | |
| **Plaintiff.** | ) | **JURY TRIAL DEMANDED** |
| _____ | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **National Debt Adjusters, Inc.** | ) | |
| **Jane Doe** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## JURISDICTION

1.  Jurisdiction is conferred on this Court pursuant to the provisions of 28 U.S.C. §
    1331 and pursuant to 15 U.S.C. §1692k(d) and pursuant to 28 U.S.C. § 1367
    for pendent state law claims.

2.  This action arises out of Defendants' violations of the Fair Debt Collection Practices
    Act, 15 U.S.C. §1692 *et seq*. ("FDCPA"), violations of the Connecticut Unfair
    Trade Practices Act, C.G.S. §36a-110 *et seq.* and out of the invasions of

1

Plaintiff's personal and financial privacy by these Defendants and their agents in their illegal efforts to collect consumer debts from the Plaintiff.

3.  Venue lies in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4.  Plaintiff, Dorothy Ann Burlison (Plaintiff) is a resident of the full age of majority, domiciled in the Town of Meriden, County of New Haven, and State of Connecticut and is a consumer as that term is defined by 15 U.S.C. §1692a(3), a "consumer debtor" as that term is defined by C.G.S. §36a-800(2), and a "person who suffer[ed] any ascertainable loss" under C.G.S. §42-110g.

5.  The defendant in this case, National Debt Adjusters, Inc. (hereinafter "Defendant" or "NDA"), is a corporation incorporated in the State of Florida, having a principal place of business at 4301 South Flamingo Road, Suite 106-173, Davie, Florida 33330, and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6); a "Consumer collection agency" as that term is defined by C.G.S. §36a-800(1) and a "person engaged in debt adjustment" as that term is understood by C.G.S. §36a-655, *et seq*.

6.  On information and belief, NDA uses the internet to solicit prospective clients.

7.  NDA uses the internet and telephone lines to obtain signed retainer agreements from clients residing in states other than its home state of Florida.

8.  On information and belief, under the guise of its "debt settlement" operation, NDA regularly collects money from 'consumers' for the payment of 'debts' to

'creditors', as the terms 'consumers', 'creditors' and 'debts' are defined under the FDCPA, specifically 15 U.S.C. §1692a(3), (4) and (5) respectively.

9.  On information and belief, NDA is a for-profit company and it does not provide bona fide consumer credit counseling.  Furthermore, NDA does not have an office in Meriden, Connecticut nor anywhere else in Connecticut.

10. The defendant in this case, Barbara Brown, a/k/a Jane Doe (hereinafter "Defendant" or "Doe"), is a natural person, at all times relevant to the claims herein was employed by NDA and acting in the scope of her employment. Doe resides at an unknown address, but works at 4301 South Flamingo Road, Suite 106-173, Davie, Florida 33330, and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6); a "Consumer collection agency" as that term is defined by C.G.S. §36a-800(1) and a "person engaged in debt adjustment" as that term is understood by C.G.S. §36a-655, *et seq*.

11. Neither Defendant NDA, nor Defendant Doe are licensed with the State of Connecticut as consumer collection agencies nor as persons engaged in debt adjustment or debt negotiation as required by Connecticut law.

12. Neither Defendant NDA, nor Defendant Doe are licensed to practice law in the State of Connecticut.

## FACTUAL ALLEGATIONS

13. In January 2011, the Plaintiff was deeply indebted to multiple creditors. She was living on disability income and working part time.  Despite her best efforts, the Plaintiff was falling further and further behind on her debts.

14. Around this time, the Plaintiff was regularly receiving solicitations from so-called "Debt Settlement Companies" who offered to solve her debt problems by negotiating settlements with her creditors.

15. On January 18, 2011, the Plaintiff decided that she would attempt to hire one of these "Debt Settlement Companies" to assist her with her debts.  She was determined to hire a local company believing that she could trust someone who had a local office.  To this end, the Plaintiff opened her local phone book and searched under the category of "Debt Adjusters".

16. Under that category, the name "A American Debt Consolidation" appeared with a notation which stated "Merd" and listed a phone number with a Meriden Connecticut exchange "203 686-0250".

17. Believing this listing to be for a Meriden, Connecticut based debt-consolidation company, the Plaintiff called the number.  She believed she would be able to make an appointment to meet with someone in person at the company's location in Meriden.

18. The Defendant Doe answered the phone.  She was very nice.  She gave the Plaintiff the feeling that everything would be alright.  She did not identify herself as working for "A American Debt Consolidation" or any other company.  Doe proceeded to obtain the Plaintiff's date of birth, social security number and an extensive amount of personal information.

19. After obtaining information relative to all of the Plaintiff's income and expenses, Doe performed an analysis which determined that the Plaintiff could afford to make payments in the amount of $599.00 per month.

4

20. The Plaintiff, who suffers from bi-polar disorder, became extremely agitated at this news.  She had tremendous anxiety believing that she could not afford that payment.  The Plaintiff did not tell Doe this because she was very embarrassed and ashamed of the level of her debt.  She was on the verge of tears; her leg was shaking uncontrollably, and her mind was racing.

21. The Plaintiff told Doe that she wanted to payoff the smaller bills first, but Doe said "Oh no, you have to payoff the higher ones first."  Again the Plaintiff was too nervous to ask Doe why this would be the case.

22. Once Doe had obtained all the information she wanted and announced the amount which Plaintiff would have to pay, her tone of voice changed.  Instead of comforting and supportive, Doe became demanding and assertive.  She wanted to know if the Plaintiff had a fax machine or computer to which she could send documents.  The Plaintiff told Doe that her niece lived with her and had a computer.  Doe insisted that the Plaintiff provide an email address for the niece so that Doe could send the paperwork.  She further insisted that the Plaintiff sign the agreement immediately.

23. Doe instructed the Plaintiff to remain on the phone while she sent NDA's contract to the niece's computer.  When the contract arrived via email, Doe instructed the Plaintiff to follow a hyper-link which, when clicked upon, brought the Plaintiff to a webpage which displayed the contract.  Doe further instructed the Plaintiff to click hyper-links which would indicate that the Plaintiff agreed to the terms of the contract.

24. At no point did Doe explain the terms of the contract.  Nor did she explain that NDA would charge a fee for the services to be provided under the contract. Doe further demanded that the Plaintiff provide her bank account information so that NDA could perform an automatic transfer of funds from the Plaintiff's account on a monthly basis.

25. Once the contract was electronically "signed" Doe provided the Plaintiff with a phone number at which she could be reached:  888-782-3328 extension 220.

26. The Plaintiff asked Doe if she could refer any creditors who called her to NDA or to Doe.  Doe told her "No.  Just avoid them."  This upset the Plaintiff tremendously.  She had been avoiding the creditors for several months and the pressure was enormous.  The only reason she called "A American Debt Consolidation" in the first place was to take that pressure off.  At this point the Plaintiff did not believe she had any other option except to follow Doe's instructions.  She was afraid to make Doe angry so she accepted this answer and hung up the phone.

27. This phone call took approximately one hour.

28. At no point during this conversation did the Defendant Doe inform the Plaintiff that both Doe and NDA were debt collectors attempting to collect debts, nor that any information obtained would be used for that purpose.

29. At some point that same night, the Plaintiff printed a copy of the contract provided by NDA, which printing caused the Plaintiff to use ink and paper.

30. As soon as she hung up the phone, the Plaintiff was extremely upset.  She had not found the relief she sought at all.  She had been lured in by Doe's sympathetic

6

tone at the beginning of the conversation, then strong armed into signing a contract she did not understand by Doe's high pressure sales tactics.

31. That night the Plaintiff did not sleep at all.  Her bi-polar disorder makes it difficult to sleep ordinarily, and she often takes prescription medication to help her sleep.  That night, even after taking her prescription Ambien she could not sleep at all.  She spent the night with her mind racing, obsessing over the fact that she could not afford to pay $599.00 per month.  She felt victimized by Doe.

32. The next morning she was scheduled to meet with her therapist, but she could not make the appointment because of a blizzard.  This caused her further distress as she could not speak to anyone about what she had done.  She continued to obsess:  The thought "What did I do?" raced over and over in her mind.

33. She took out the printed copy of the paperwork she had "signed" on the computer the night before and noticed that it did not say "A American Debt Consolidation" but instead said "National Debt Adjusters."  This caused her further anxiety as this was the first time she realized that she was not dealing with a local company.  She was distressed over the fact that some out-of-state company now had all of her personal information.

34. Since this incident, the Plaintiff has had many sleepless nights, has had difficulty concentrating at work, and has had to have her medication adjusted.  She worries because in the past when she has been very depressed she has become suicidal.  Her vulnerability to this type of thinking caused her severe anxiety.

7

35. Florida based NDA's listing itself as "A American Debt Adjustment" in the

    Meriden, Connecticut phone book, showing a "Merd" address and using a

    Meriden phone exchange constituted a false and misleading representation in

    violation of 15 U.S.C. § 1692e(10) and (14).

36. The failure of Defendant Doe to disclose that she and NDA were debt collectors

    and any information obtained would be used for that purpose constituted a

    false and misleading representation in violation of 15 U.S.C. § 1692e(11).

37. The failure of NDA to include in its contract, the first written communication it

    sent to the Plaintiff, the fact that it was a debt collector and that any

    information obtained would be used for that purpose constituted a false and

    misleading representation in violation of 15 U.S.C. § 1692e(11).

38. The failure of NDA to ever provide any notices required by 15 U.S.C. § 1692g(a)

    constituted a violation of 15 U.S.C. § 1692g.

39. Doe's statement that the Plaintiff must pay off her larger debts before her smaller

    debts constituted a false and misleading representation in violation of 15

    U.S.C. § 1692e(2) and (10).

40. When Plaintiff printed a copy of Defendant NDA's contract, she suffered an

    ascertainable loss of money or property, namely the ink and paper, pursuant to

    CUTPA, the Connecticut Unfair Trade Practices Act, C.G.S. §42-110 *et seq*.

41. When Defendant Doe advised the Plaintiff that she must pay off her larger debts

    before her smaller debts, she was providing legal advice and ministering to the

    legal needs of the Plaintiff, and thereby practicing law without a license in

    violation of C.G.S. §51-88.

42. When Defendant Doe obtained Plaintiff's financial information and calculated the amount which she could afford to put aside for debt settlement, she was engaged in the business of debt adjustment without a license in violation of Connecticut law.

43. When Defendant NDA advertised in the Meriden phone book with a "Merd" listing, using a Meriden telephone exchange and a false name, it engaged in false and deceptive advertising for debt adjustment services in violation of Connecticut law.

44. When Defendant Doe engaged in the aforementioned debt collection activities, she was acting as a consumer collection agency without a license in violation of Connecticut law.

45. In violating the aforementioned public policies, as set for in C.G.S. §51-88 (unauthorized practice of law), §36a-656(a) (unlicensed debt adjuster), §36a-661(6) (false and deceptive advertising by debt adjuster), §36a-801 (unlicensed consumer collection agent), §36a-805(1) (consumer collection agency furnishing legal advice) and §36a-808 (unfair and deceptive acts in collection with consumer debts), the Defendant committed acts which are unfair or deceptive acts or practices in the conduct of a trade or commerce in violation of C.G.S. §42-110b.

46. In obtaining Plaintiff's social security number, employment status, income information and bank account number by false pretenses, Defendant Doe engaged in behavior which was outrageous and which violated Plaintiff's common law right to privacy.

**TRIAL BY JURY**

47. Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. amend 7. Fed R. Civ. Pro. 38.

*Respondeat Superior Liability*

48. The acts and omissions of the individual collector who communicated with Plaintiff as more further described herein, were committed within the time and space limits of her agency relationship with her principal, Defendant NDA.

49. The acts and omissions by this individual employee were incidental to, or of the same general nature as, the responsibilities this agent was authorized to perform by Defendant NDA in collecting consumer debts.

50. By committing these acts and omissions against Plaintiff, this individual collector was motivated to benefit her principal, Defendant NDA.

51. Defendant NDA is therefore liable to Plaintiff through the doctrine of *Respondeat Superior* for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Connecticut law, in its attempts to collect debts from Plaintiff.

**TRIAL BY JURY**

52. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.  US Const. amend. 7.  Fed.R.Civ.P. 38.

53. As a result of the defendants' actions, the defendants are liable to the plaintiff for damages, attorney's fees and costs.

**CAUSES OF ACTION**

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §1692 *et seq.*

54. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

55. The foregoing acts and omissions of Defendants and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiff.

56. As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendants herein.

## COUNT II.

## VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

## C.G.S. §42-110 *et seq.*

57. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

58. Defendants have acted, as alleged herein, in the conduct of trade or commerce as defined in C.G.S. §42-110a(4).

11

59. Defendants' actions and practices, as outlined above, violate 15 U.S.C. §1692 *et seq.*, and multiple statements of public policy as announced in the Connecticut General Statutes, as stated above.

60. As a direct and proximate result of Defendants' violation of the Connecticut Unfair Trade Practices Act, C.G.S. §42-110b(a), Plaintiff has suffered an ascertainable loss of money or property and other actual damages under C.G.S. §42-110g(a) in an amount to be proved at trial.

61. Defendants are also liable, pursuant to C.G.S. §42-110g(a), for punitive damages.

62. Furthermore, Defendants are liable, pursuant to C.G.S. §42-110g(d), for costs and reasonable attorneys' fees.

63. In compliance with C.G.S. §42-110g(c), a copy of this Complaint has been mailed to the Attorney General of the State of Connecticut and the Commissioner of the Connecticut Department of Consumer.

## COUNT III
## INVASION OF PRIVACY

64. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

65. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

> 15 U.S.C. § 1692(a) (emphasis added).

12

66. Congress further recognized a consumer's right to privacy in financial data in

passing the Gramm Leech Bliley Act, which regulates the privacy of

consumer financial data for a broad range of "financial institutions" including

debt collectors albeit without a private right of action, when it stated as part of

its purposes:

> It is the policy of the Congress that **each financial institution has an**
>
> **affirmative and continuing obligation to respect the privacy of its**
>
> **customers** and to protect the security and confidentiality of those
>
> customers' nonpublic personal information.
>
> 15 U.S.C. § 6801(a) (emphasis added).

67. Defendants and/or their agents intentionally and/or negligently interfered,

physically or otherwise, with the solitude, seclusion and/or private concerns or

affairs of this Plaintiff, namely, by unlawfully and deceptively attempting to

collect consumer debts and obtaining personal non-public information and

thereby invaded the Plaintiff's privacy.

68. Defendants and their agents intentionally and/or negligently caused emotional

harm to the Plaintiff by engaging in highly offensive conduct in the course of

collecting this debt, thereby invading and intruding upon the Plaintiff's right

to privacy.

69. The Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude,

seclusion, private concerns or affairs, and private financial information.

70. The conduct of these Defendants and their agents, in engaging in the above-

described illegal collection conduct against this Plaintiff, resulted in multiple

13

intrusions and invasions of privacy by these Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

71. As a result of such intrusions and invasions of privacy, the Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendants and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendants and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendants and for Plaintiff; and

- for such other and further relief as may be just and proper.

## COUNT II.

## VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

## C.G.S. §42-110 et seq.

- for an award of actual damages pursuant to C.G.S. §42-110g(a) against Defendants and for Plaintiff;

- for an award of punitive damages pursuant to C.G.S. §42-110g(a) against Defendants and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to C.G.S. §42-110g(d) against Defendants and for Plaintiff; and

- for such other and further relief as may be just and proper.

## COUNT III.

## INVASION OF PRIVACY

- for an award of actual damages against Defendants and for Plaintiff;

- for such other and further relief as may be just and proper.

Dated this the 15th day of January, 2012.

Respectfully Submitted— Dorothy Ann Burlison


BY:  /s/ George T. Holler
George T. Holler
Her attorney
9 Research Drive, Suite 2
Milford, Connecticut 06460
Tel: (203) 301-4333
Fax: (203) 306-3113
CT 27371
georgeh@hollerlawfirm.com